# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TEMPLE-INLAND, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 14-654-SLR |
| | ) |
| THOMAS COOK, in his capacity as the | ) |
| Secretary of Finance for the State of | ) |
| Delaware; DAVID M. GREGOR, in his | ) |
| capacity as the State Escheator of the | ) |
| State of Delaware; and MICHELLE M. | ) |
| WHITAKER in her capacity as the Audit | ) |
| Manager for the State of Delaware, | ) |
| | ) |
| Defendants. | ) |

Brian M. Rostocki, Esquire and John C. Cordrey, Esquire of Reed Smith LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Diane Green-Kelley, Esquire of Reed Smith LLP.

David J. Margules, Esquire, Beth Moskow-Schnoll, Esquire, and Jessica L. Case, Esquire of Ballard Spahr LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Edward K. Black, Esquire of the Division of Revenue, and Caroline Lee Cross, Esquire of the Department of Justice of Ballard Spahr LLP.

# MEMORANDUM OPINION

Dated: March 11, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On May 21, 2014, plaintiff Temple-Inland Inc. ("plaintiff") filed a complaint against defendants Thomas Cook ("Mr. Cook"), in his capacity as the Secretary of Finance for the State of Delaware; David M. Gregor ("Mr. Gregor"), in his capacity as the State Escheator of the State of Delaware; and Michelle M. Whitaker ("Ms. Whitaker"), in her capacity as the Audit Manager for the State of Delaware (collectively, "defendants"). Plaintiff seeks equitable, declaratory, injunctive and other relief under 28 U.S.C. §§ 2201-2202 and 42. U.S.C. § 1983 for violation of plaintiff's rights under federal law and the United States Constitution. (D.I. 1) Plaintiff challenged the use of a statistical model by the Department of Finance of the State of Delaware to estimate plaintiff's obligations under Delaware's Abandoned and Unclaimed Property Law, 12 Del C. §§ 1110, et seq. (the "Escheat Act"). Also on May 21, 2014, plaintiff moved for a preliminary injunction to enjoin defendants from enforcing the assessment of $1,388,573.97 in uncashed accounts payable and payroll checks during calendar years 1986-2008, and to enjoin defendants' continued examination of plaintiff's records for potentially abandoned or unclaimed property. (D.I. 3) On July 2, 2014, the parties jointly stipulated to a standstill regarding the enforcement of the assessment and examination of records pending entry of final judgment, and plaintiff withdrew its motion for a preliminary injunction. (D.I. 20)

Presently before the court is plaintiff's motion for summary judgment (D.I. 22), and defendants' motion to dismiss for lack of jurisdiction over the subject matter and motion to dismiss for failure to state a claim (D.I. 24). The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as plaintiff asserts five counts for federal

preemption and violations of the United States Constitution. Requests seeking injunctive relief, such as those asserted by plaintiff, have been held to form the basis for federal question jurisdiction. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute [over] which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").

## II. BACKGROUND

### A. The Parties

Plaintiff is a corporation organized under the laws of Delaware, with a principal place of business in Memphis, Tennessee. Plaintiff is a manufacturer and nationwide supplier of corrugated packaging.

Mr. Cook is the Delaware Secretary of Finance. Section 1102 of the Delaware Code vests authority for the administration and enforcement of the Escheat Act "in the Secretary of Finance or the Secretary's delegate." 12 Del. C. § 1102. Mr. Gregor is the Secretary's delegate and holds the title of Delaware State Escheator. As State Escheator, Mr. Gregor "may make such rules and regulations as the Escheator may deem necessary to enforce [the Escheat Act]." *Id.* § 1154. Ms. Whitaker is the Delaware Abandoned Property Audit Manager, acting under the direction of the State Escheator. As the Audit Manager, Ms. Whitaker may issue a statement of findings and request for payment from a Delaware corporate citizen who has under-reported unclaimed property. *Id.* § 1156(a).

### B. Delaware Escheat Law

2

All fifty states, as well as the District of Columbia, have laws that govern the disposition of unclaimed property, often referred to as "escheat laws." Many states, with the exception of Delaware and five others, model their escheat laws on the Uniform Unclaimed Property Act ("UUPA"). Diane Green-Kelly, *Unclaimed Property: An Ancient Concept Creating Modern Liabilities*, 32 FRANCHISE L.J. 41, 41 (2012). Escheat laws require companies holding unclaimed or abandoned property,[1] whether tangible or intangible, to turn that property over to the State. The stated purpose of Delaware's Escheat Act is to provide for the "care and custody . . . of all abandoned property paid to the State Escheator" until the property is reclaimed by the true owner. 12 Del. C. § 1144(a).[2]

Procedurally, a company must typically first attempt to return the abandoned property to the owner, using the owner's name and last known address, before turning the property over to the State. Once the State takes custody, the company is no longer liable to the property owner, and the State will attempt to reunite the owner with the property. *Id.* § 1144(b). To facilitate the reunion, the State Escheator is mandated to "maintain a public record of all names and last known addresses of the person or

---

[1] Under Delaware's Escheat Law, the holder of property is defined as "any person having possession, custody or control of the property of another person," whereas the owner is "any person . . . having the legal or equitable title to property coming within the purview of this subchapter." 12 Del. C. § 1198(7)-(8).

[2] The Delaware state legislature defined "abandoned property" as "property against which a full period of dormancy has run" where the "period of dormancy" is "the full and continuous period of 5 years . . . during which an owner has ceased, failed or neglected to exercise dominion or control over property or to assert a right of ownership or possession or to make presentment and demand for payment and satisfaction or to do any other act in relation to or concerning such property." 12 Del. C. §§ 1198(1)-(9)a.

3

persons appearing to be entitled to the abandoned property paid or delivered to the State Escheator." *Id.* § 1141. "[T]o the extent necessary for the proper disposition of property," if "the records of the holder available for the periods subject to this chapter are insufficient to permit the preparation of a report, the State Escheator may require the holder to report and pay to the State the amount of abandoned or unclaimed property that should have been but was not reported[, and] that the State Escheator reasonably estimates to be due and owing on the basis of any available records of the holder or by any other reasonable method of estimation." *Id.* § 1155.

The Escheat Act was amended in 2010 by Senate Bill No. 272 § 4 to permit the State Escheator to estimate the liability for unclaimed property "[w]here the records of the holder available for the periods subject to [examination] are insufficient to permit the preparation of a report." *Id.* § 1155. In amending the statute, the Delaware General Assembly found that "the employment of estimation techniques is an accepted and routine practice used both by holders of abandoned and unclaimed property and by the State Escheator in determining holders' liability to report and pay such property to the State with respect to periods for which inadequate holder records exist." Delaware Senate Bill No. 272 (May 12, 2010) (hereinafter "SB No. 272").

### C. Factual Background

On December 22, 2008, pursuant to his authority under 12 Del. C. § 1155, the State Escheator initiated an unclaimed property audit of plaintiff. The State Escheator notified plaintiff that the audit period would begin in 1981, and he asked plaintiff to make past and present records of unclaimed property "retained under standard retention

4

policies" available for examination.[3] An examination of plaintiff's unclaimed property reports revealed that plaintiff escheated a cumulative total of \$1,338,116.70 of unclaimed accounts payable and payroll checks to various states during the audit period, including Delaware.

Plaintiff produced disbursement records for payroll starting in the year 2004 and disbursement records for accounts payable starting in the year 2003. The audit resulted in no unclaimed property esheatable to Delaware from the payable disbursement account, and \$147.30 in unclaimed moneys from the payroll disbursement account. The \$147.30 was escheated to Delaware on May 22, 2013. Because plaintiff was unable to produce records prior to 2003,[4] the State Escheator used an estimation method to extrapolate the amount of unclaimed property due to Delaware. Defendants reported an underpayment of approximately \$2.1 million, and later reduced the amount to \$2.0 million. Following an administrative appeal by plaintiff and appointment of an independent reviewer, the Secretary of Finance accepted a reduction in the amount owed to \$1,388,573.98, with collection to be enforced by the State Escheator.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss for Failure to State a Claim[5]

---

[3] Plaintiff contends that standard retention policies are typically 7 to 10 years, a fact allegedly admitted by the State Escheator. (D.I. 1 at ¶ 49)

[4] Plaintiff asserts it only retained disbursement records for payroll for the year 2004 and later and for accounts payable for the year 2003 and later. (D.I. 1 at ¶ 53)

[5] Defendants also move to dismiss on the basis of lack of subject-matter jurisdiction under 12(b)(1), but do not present supporting arguments for such in their briefing.

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation

marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; see also *Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); see also *Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

### A. Federal Common Law and Preemption

Plaintiff contends that, to the extent that § 1155 of the Escheat Act authorizes estimation of unclaimed debts, it violates and is preempted by federal common law

8

established in *Texas v. New Jersey*, 379 U.S. 674 (1965), and its progeny[6] (collectively,

"the *Texas Cases*"). In the following passage from *Delaware v. New York*, the most

recent of the *Texas Cases*, the Supreme Court addressed the escheat of securities held

by brokers for unknown beneficiaries:

> We therefore resolve disputes among States over the right to
> escheat intangible personal property in the following three
> steps. First, we must determine the precise debtor-creditor
> relationship as defined by the law that creates the property
> at issue. Second, because the property interest in any debt
> belongs to the creditor rather than the debtor, the primary
> rule gives the first opportunity to escheat to the State of "the
> creditor's last known address as shown by the debtor's
> books and records.". . . Finally, if the primary rule fails
> because the debtor's records disclose no address for a
> creditor or because the creditor's last known address is in a
> State whose laws do not provide for escheat, the secondary
> rule awards the right to escheat to the State in which the
> debtor is incorporated.

507 U.S. 490, 499-500 (1993).

Plaintiff argues that the Supreme Court's holding in *Delaware* limited the State's

authority to collect unclaimed property to situations where a "precise debtor-creditor

relationship" is shown. *Id.* at 499. Plaintiff highlights the fact that the Court declined "to

use a statistical surrogate instead of debtor's records to locate the last known

addresses of creditors." *Id.* at 509. Defendants' failure to point to specific debtors,

plaintiff argues, runs afoul of the requirement to identify a "precise" relationship. (D.I. 27

at 8-10) Even though *Delaware* addressed a dispute between two States, plaintiff

argues that the *Texas Cases* nevertheless apply to disputes between private parties

and States. For support, plaintiff cites a decision from the United States District Court

---

[6] *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507
U.S. 490 (1993).

9

for the District of New Jersey which held: "[I]t is true that the Supreme Court's original jurisdiction [in the *Texas Cases*] was premised on the dispute between state parties, but to say that the Court's substantive decision is limited to state parties confuses jurisdiction with the merits." *American Express Travel Related Services, Inc. v. Sidamon-Eristoff*, 755 F.Supp. 2d 556, 608 (D.N.J. 2011), *aff'd sub nom New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 375 (3d Cir. 2012).

The court finds that, consistent with the stated purpose of the priority scheme in *Delaware* to "resolve disputes among States," the *Texas Cases* apply to disputes among States, not to disputes between private parties and States. Although relevant case law on the topic of escheat law is sparse, such a finding is in accord with a number of state court opinions addressing the applicability of the *Texas Cases*. *See Riggs Nat'l Bank of Wash., D.C. v. District of Columbia*, 581 A.2d 1229, 1245 (D.C. Ct. App. 1990) (the *Texas* Court was "not confronted with, nor did it decide, the relative rights of abandoned property as between a private holder and a State"); *New Jersey v. Chubb Corp.*, 570 A.2d 1313 (N.J. Super. 1989) (the *Texas* guidelines "relate only to conflicts among states"); *O'Connor v. Sperry & Hutchinson Co.*, 379 A.2d 1378, 1381 (Pa. Commw. Ct. 1977) ("It is apparent in our view that the Court meant its rule to be binding only where there were multiple claims to the same property."), *aff'd*, 412 A.2d 539 (1980).[7] Moreover, finding that the Supreme Court's holding in *Delaware* preempts the

---

[7] In *American Express*, the district court applied the *Texas Cases* to determine whether the State of New Jersey could escheat assets over which it had neither first nor second priority under the priority scheme outlined in *Delaware*. 755 F.Supp at 604-05. Unlike *American Express*, the present dispute concerns the propriety of estimates, not whether the State of Delaware has authority to escheat under the *Delaware* priority scheme.

10

State's valid exercise of regulatory power over abandoned property would be contrary to the well-established principle that federal courts may not ordinarily displace state law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state."). As the court discerns no preemptive federal law, it need not reach the question of whether *Delaware* bars the use of estimates to fix a holder's escheat liability. For the aforementioned reasons, the court grants defendants' motion to dismiss count I of the complaint alleging violation of and preemption by federal common law.[8] (D.I. 24)

## B. Substantive Due Process

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deprive any person of life, liberty, property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. A person claiming protection under the Fourteenth Amendment must first demonstrate that he or she has a protectable interest - of life, liberty or property. Once a protectable interest has been established, "[t]he Supreme Court has interpreted [the Fourteenth Amendment] to provide two distinct guarantees: substantive due process and procedural due process." *DeKalb Stone, Inc. v. County of DeKalb, Georgia*, 106 F.3d 956, 959 (11th Cir. 1997). Substantive due process includes among its protections the general protection against "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Id.* The Third Circuit has recognized that substantive due process encompasses

---

[8] The court, accordingly, denies plaintiff's motion for summary judgment that federal common law preempts the State Escheat Act and prohibits estimation of abandoned property. (D.I. 22)

11

"at least two very different threads." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).

The first thread of substantive due process, which is not implicated in this case, concerns a challenge to the validity of a legislative act. *Id.* Such a legislative act will survive a substantive due process challenge as long as the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir. 1997) (quoting *Sammon v. New Jersey Bd. Of Med. Examiners*, 66 F.3d 639, 645 (3d Cir. 1995)).

The second thread of substantive due process concerns protection against "certain types of non-legislative state action." *Nicholas*, 227 F.3d at 140. While protection against the arbitrary exercise of power by government officials is primarily the purview of procedural due process, the Third Circuit has held that non-legislative government deprivation "that comports with procedural due process may still give rise to a substantive due process claim 'upon allegations that the government deliberately and arbitrarily abused its power.'" *Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 (3d Cir.1997) (quoting *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 683 (3d Cir.1991)); *see also Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir.2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities."). The burden is on the plaintiff to demonstrate it was the victim of "a governmental action [that] was arbitrary, irrational, or tainted by improper motive," *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir.2000) (*abrogated on*

12

*other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316
F.3d 392, 400-01 (3d Cir. 2003)) (quoting *Bello v. Walker*, 840 F.2d 1124, 1129 (3d
Cir.1988)), or that the government's conduct was so egregious that it "shocks the
conscience," *Boyanowski*, 215 F.3d 396, 401 (internal quotation marks omitted). The
"shocks the conscience" standard "is no calibrated yardstick," and thus conduct that
"shocks in one environment may not be so patently egregious in another." *County of
Sacramento*, 532 U.S. at 847, 850.

As a threshold matter, "a plaintiff must establish . . . that he has a protected
property interest to which the Fourteenth Amendment's due process protection applies."
*Woodwind Estates*, 205 F.3d at 123. Not all property interests covered by procedural
due process are protected through substantive due process. *Reich v. Beharry*, 883
F.2d 239, 243 (3d Cir. 1989). Rather, "a plaintiff must have been deprived of a
particular quality of property interest." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d
592, 598 (3d Cir.1995) (*abrogated on other grounds by United Artists Theatre*, 316 F.3d
at 400). Whether a property interest is of a "particular quality" depends on whether the
interest in "fundamental" under the United States Constitution. *Nicholas*, 227 F.3d at
140. The Third Circuit approaches the topic of qualifying property interests with caution,
finding that real property ownership is "worthy of substantive due process protection,"
*DeBlasio*, 53 F.3d at 600, but other interests – such as a service contract with the state
– do not qualify, *Reich*, 883 F.2d at 245. In the context of escheat law, the first of the
*Texas Cases* held that "a debt which a person is entitled to collect" is a type of
"intangible real property." *Texas*, 379 U.S. at 677. The Supreme Court further held that
the Due Process Clause "prevents more than one State from escheating a given item of

13

property." *Id.* at 628; *see also Western Union Telegraph Company v. Pennsylvania*, 368 U.S. 71, 75 (1961) (a debtor "is deprived of due process of law if he is compelled to relinquish [the property] without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment.").

Defendants focus their briefing on the first thread of substantive due process, arguing that that the Escheat Act does not violate due process because "Delaware's legitimate interest in safeguarding and using abandoned assets is furthered by [the Escheat Act's approval of] using estimates where records are inadequate to fix value specifically." (D.I. 25 at 14) However, rational basis review is not the appropriate standard here where plaintiff does not challenge the constitutionality of the Escheat Act, but instead alleges a deprivation of property under the second thread of substantive due process. Specifically, plaintiff alleges a deprivation of property in the form of the money claimed by the State under authority of the Escheat Act, arguing that the use of estimates to calculate the debt results in two or more States claiming the same property as expressly prohibited by the *Texas Cases*. Although, as an estimate, the disputed debt itself cannot be attributed to a particular owner, the unclaimed money on which the estimate is based may be traced to identifiable creditors. Plaintiff alleges that defendants' estimate is based on, *inter alia*: (1) uncashed checks escheated to other states under the primary rule (D.I. 1 at ¶¶ 77(d), 77(g)); (2) checks that were voided, reissued and cashed by the payees (*Id.* at ¶¶ 77(c), 77(f); and (3) checks payable to payees with addresses in other States, some of which expressly exempt the property from escheat (*Id.* at ¶¶ 77(a), 90). If the allegations as claimed are true, the disputed

14

money may indeed violate the Supreme Court's prohibition against "more than one State . . . escheating a given item of property." *Texas*, 379 U.S. at 676. Accordingly, the court denies defendants' motion to dismiss count II of the complaint alleging a violation of substantive due process under the Fourteenth Amendment. (D.I. 24)

## C. Ex Post Facto Clause

Article I, § 10, of the United States Constitution prohibits the States from passing any "ex post facto Law." The Supreme Court determined that the Ex Post Facto Clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990); *see also Weaver v. Graham*, 450 U.S. 24, 29 n.13 (1981) (the Ex Post Facto Clause is "concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred."). To establish a violation of the Ex Post Facto Clause, the challenger must demonstrate "that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." *Johnson v. United States*, 529 U.S. 694, 699 (2000).

Civil legislation violates the Ex Post Fact Clause "[i]f the intention of the legislature was to impose punishment." *Smith v. Doe*, 538 U.S. 84, 92 (2003). However, if "the intention was to enact a regulatory scheme that is civil and nonpunitive, [the court] must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). Determining whether a statutory scheme is civil or criminal "is first of all a question of statutory construction." *Kansas*,

15

521 U.S. at 361. Ordinarily, the court must "defer to the legislature's stated intent," such

as the placement of the act in the probate rather than the criminal code. *Id.*

Accordingly, "only the clearest proof will suffice to override legislative intent and

transform what has been denominated a civil remedy into a criminal penalty." *Hudson*

*v. U.S.*, 522 U.S. 93 at 100 (internal quotation marks omitted).

Here, plaintiff alleges that § 1115 of the Escheat Act violates the Ex Post Facto

Clause by imposing a retroactive penalty for lack of record-keeping. Section 1115 of

the Escheat Act provides, in part:

> Where the records of the holder available for the periods
> subject to this chapter are insufficient to permit the
> preparation of a report, the State Escheator may require the
> holder to report and pay to the State the amount of
> abandoned or unclaimed property that should have been but
> was not reported that the State Escheator reasonably
> estimates to be due and owing on the basis of any available
> records of the holder or by any other reasonable method of
> estimation.

12 Del. C. § 1155. The current version of § 1155 was adopted in June 2010 to "clarify

that, in accordance with established accounting and industry practice, the State may

employ estimation techniques in certain circumstances in order to determine a holder's

liability for abandoned or unclaimed property." Synopsis, S.B. No. 272. The Delaware

General Assembly explained that,

> the employment of estimation techniques is an accepted and
> routine practice used both by holders of abandoned and
> unclaimed property and by the State Escheator in
> determining holders' liability to report and pay such property
> to the State with respect to periods for which inadequate
> holder records exist, and desires to ratify and affirm that the
> State Escheator has inherent authority to estimate
> abandoned and unclaimed property liability when adequate
> records do not exist.

16

*Id.* at § 3.

Defendants allege that § 1155 is not "retroactive" because the use of estimates to evaluate debt is a longstanding practice in Delaware. *See* Stanford Stevenson, *Unclaimed Property: Basics and New Developments*, 30-FALL DEL. LAW. 14, 16 (2012) ("Unclaimed liability to Delaware has been calculated by extrapolation and estimation for years, both by the state's auditors and by holders themselves despite there being no specific authority providing for this technique."); *see also* Greene-Kelly, 32 FRANCHISE L.J. at 41 ("The State of Delaware regularly audits entities domesticated in the state for compliance with unclaimed property laws for audit periods as far as [sic] back as 1981."). Plaintiff challenges the general acceptance of statistical sampling methods prior to the 2010 amendment to the Escheat Act, arguing that any use of estimates occurred outside of Delaware and, in those States, estimation was a penalty for inadequate record-keeping. Additionally, plaintiff alleges that the State Escheator admitted that "standard retention policies" are 7 to 10 years. (D.I. 1 at ¶¶ 47, 49)

As for whether § 1155 is "punitive," defendants compare § 1155 with the UUPA, which imposes a 10-year record retention requirement, the violation of which allows the administrator to "reasonably estimate[]" the amount due "on the basis of any available records of the holder or by any other reasonable method of estimation." Uniform Unclaimed Property Act §§ 20(f)-21(a). In the comments section, the drafters of the UUPA clarified that § 20(f) should be "viewed as a penalty for failure to maintain records of names and last known address." *Id.* § 20(f) cmt. The drafters opined that § 20, therefore, is consistent with *Texas v. New Jersey* which "is intended to prevent multiple liability of holders." *Id.* Defendants urge that § 1155, unlike § 20 of the UUPA, is

17

characterized as a non-penal confirmation of existing evidentiary practice. Defendants add that because § 1155 mandates that the estimate be "reasonable," it cannot be viewed as a penalty.

The Supreme Court defines a retroactive law as one that applies to "conduct completed before its enactment." *Johnson*, 529 U.S. at 699. Here, § 1155 of the Escheat Act was enacted in 2010, but it authorized the use of estimates for conduct (namely, inadequate record-keeping) stretching back as far back as 1981. Although Senate Bill No. 270 §13(c) states that "[s]ections 3 through 13 [including the amendment to § 1155] of this Act shall become effective upon their enactment into law," the Delaware General Assembly specifically omitted the UUPA's suggested language, "[i]f, after the effective date of this [Act]," from the introduction to §1155, thereby indicating that the General Assembly intended estimates to be applied retroactively to conduct occurring before the enactment of § 1155. The First Circuit has held that where a statutory amendment "simply codified pre-existing practice . . ., retroactive application of the amendment raises no *ex post facto* concerns." *U.S. v. Pelkey*, 57 F.3d 1061 (1st Cir. 1995). Although § 1155 was retroactively applied in accordance with the intent of the General Assembly, questions of fact remain as to whether the legislation merely codified a pre-existing practice and, as a consequence, fails to trigger Ex Post Facto review.

In addition to being applied retroactively, legislation that violates the Ex Post Facto Clause must also be punitive in nature. *Smith,* 538 U.S. at 92. Regardless of whether § 1155 of the Delaware Escheat Act was in fact based on § 20 of the UUPA, both sections call for payment of the amount the administrator "reasonably estimates . .

18

. on the basis of any available records of the holder or by any other reasonable method of estimation." Because § 20 of the UUPA was intended to be a penalty provision, yet still requires the method of estimation to be "reasonable," defendants' argument that § 1155 is not a penalty because it calls for reasonable estimates is unpersuasive. Moreover, § 1155 and § 20 are structurally and linguistically similar, and neither labels the estimate provision as a "penalty" on its face. The drafters of the UUPA anticipated a potential conflict with the *Texas Cases* for dual-liability by authorizing the use of estimates, and they forestalled any such conflict by explaining that § 20 was to be viewed as a penalty. *See* Uniform Unclaimed Property Act § 20(f) cmt. The Delaware General Assembly, on the other hand, eliminated the document retention requirement and avoided characterizing § 1155 as a penalty. In so doing, the General Assembly set the stage for a violation of substantive due process. In other words, defendants are faced with a dilemma: If § 1155 is not a penalty provision, it likely violates plaintiff's rights to substantive due process. If, on the other hand, § 1155 is a penalty provision, its retroactive application likely violates the Ex Post Facto Clause. The court is unprepared, at this juncture, to determine which scenario is most likely.

For the aforementioned reasons, the court finds that plaintiff's pleading withstands defendants' motion to dismiss count III of the complaint alleging an unlawful Ex Post Fact Law. (D.I. 24) The court, however, does not grant plaintiff's motion for summary judgment that defendants violate the constitutional ban on Ex Post Facto Laws by retroactively applying a substantive amendment to the Delaware Escheat Law. (D.I. 22) At a minimum, issues of fact remain regarding whether using estimates to

calculate liability was a change of practice, or merely codification of a pre-existing practice.

## D. Takings Clause

Claims for a taking without just compensation are pursued under the Fifth Amendment through the Fourteenth Amendment. The Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. While the Fifth Amendment does not prohibit the taking of private property by the State, it "places a condition on the exercise of that power." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314 (1987). The Fifth Amendment "is designed not to limit the governmental interference with property right per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Id.* at 315. The Third Circuit has set forth three factors to consider when conducting a takings analysis: "first, whether the government's action entails a physical invasion of the plaintiff's property; second, the extent to which it results in a diminution in the value of plaintiff's property; and third, the degree to which it interferes with plaintiff's reasonable, distinct, investment-backed expectations." *Keystone Bituminous Coal Assn. v. Duncan*, 771 F.2d 707, 715 (3d Cir. 1985) *aff'd sub nom. Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987). The Supreme Court has held that a "'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

Courts equate the public use requirement as "coterminous with the scope of a sovereign's police powers." *Carole Media LLC v. New Jersey Transit Corp.*, 550 F.3d 302, 307 (3d Cir. 2008) (internal quotation marks omitted). Even if one of the legislature's motives is to raise revenue, this does not render a taking unconstitutional. *Id.* at 310. In the escheat context, the Supreme Court has rationalized that "[i]t is the owner's failure to make any use of the property – and not the action of the State – that causes the lapse of the property right; there is no 'taking' that requires compensation." *Texaco Inc. v. Short*, 454 U.S. 516, 529 (1982). Based on this logic, the Third Circuit has found no Takings Clause violation when unclaimed property statutes allow States to retain interest earned on abandoned property while in state custody. *Simon v. Weissman*, 301 F. App'x. 107, 113 (3d Cir. 2008).

The parties focus their dispute on whether plaintiff has a legitimate property interest in the assets, with defendants arguing that plaintiff is merely holding the property for the legitimate owner and plaintiff arguing that defendants have failed to identify any property legitimately subject to escheat. As previously explained, the court finds that plaintiff has pled sufficient facts to support the position that it has a legitimate property interest in the estimated debt given that the estimate may not be traceable to bona fide creditors. It follows that, if Delaware does not have the authority to escheat the property in question, then the seizure of such property without just compensation would be a violation of the Takings Clause. Accordingly, the court denies defendants' motion to dismiss count IV of the complaint alleging an unlawful taking without just compensation. (D.I. 24)

## E. Commerce Clause and Full Faith and Credit Clause

The Commerce Clause of the United States Constitution provides that "Congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Although it is phrased as an affirmative grant of power to Congress, the Commerce Clause has long been understood to have a "negative" or "dormant" aspect that prohibits the States from unjustifiably discriminating against or burdening interstate commerce. *See Oregon Waste Sys., Inc. v. Department of Environmental Quality*, 511 U.S. 93, 98 (1994). Consequently, a state law or regulation is unconstitutional and invalid if it discriminates against interstate commerce—that is, if it results in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id*. at 99. A finding that a state law or regulation creates such "economic protectionism" may be made on the basis of discriminatory purpose or discriminatory effect. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984).

The Third Circuit has articulated three standards of review: (1) state actions that purposefully or arbitrarily discriminate against interstate commerce or undermine uniformity in areas of particular federal importance are given heightened scrutiny; (2) legislation in areas of peculiarly strong state interest is subject to very deferential review; and (3) the remaining cases are governed by a balancing rule, under which state law is invalid only if the incidental burden on interstate commerce is clearly excessive in relation to the putative local benefits. *See Old Bridge Chemicals, Inc. v. New Jersey Dept. of Environmental Protection*, 965 F.2d 1287, 1291 (3d Cir. 1992) (citations omitted). A discriminatory restriction of commerce is subject to the "strictest scrutiny" and must be struck down unless the State can prove that it "advances a legitimate local purpose that cannot be adequately served by reasonable

nondiscriminatory alternatives." *Oregon Waste*, 511 U.S. at 100–101 (citation omitted). That is, the statute will not be upheld if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142 (1970).

As for the Full Faith and Credit Clause, federal common law imposes on the State of Delaware a full-faith-and-credit requirement to give another State's federal judgment the same force and effect as it would be entitled to in that State's federal or state courts. Delaware law "requires our courts to afford the same respect to federal court judgments that the Full Faith and Credit Clause requires them to afford to judgments from other states." *See Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 616–17 (Del. 2013) (applying California collateral estoppel law to determine preclusive effect of prior California federal court demand futility dismissal). The Supreme Court has held that "[t]he Full Faith and Credit Clause bars . . . double escheat" where the "debts or demands . . . [were] taken from the appellant company by a valid judgment" of another State. *W. U. Tel. Co. v. Com. of Pa., by Gottlieb*, 368 U.S. 71, 75-76 (1961).

Plaintiff alleges that defendants' estimation methodology affects economic production, and by extension, interstate commerce in other states outside of Delaware. (D.I. 1 at ¶ 147) Plaintiff also alleges a violation of the Full Faith and Credit Clause in that defendants assess plaintiff for property owned by creditors in States that expressly exempt the property from escheat under a "business-to-business" exemption. (*Id.* at ¶ 148) Plaintiff complains that, in requiring plaintiff to pay Delaware for property that other States exempt, defendants interfere with commerce in those States. (*Id.* at ¶ 149)

Defendants respond that the Commerce and Full Faith and Credit Clauses are not implicated because plaintiff's claims rest on the faulty assumption that a holder's state of incorporation may not escheat assets due to another State, citing the Supreme Court's holding that a debtor's state of incorporation may escheat if the "laws of the creditor's State do not provide for escheat." *Delaware*, 507 U.S. at 504. Defendants also argue that plaintiff fails to explain how defendants interfere with interstate commerce given that the assessment is levied on the debtor entity, not the State. Defendants also take issue with the lack of evidence regarding how much of the challenged assessment is attributable to allegedly excluded "business-to-business" debts.

Given the brevity of the parties' briefing, the court is unprepared, at this stage, to determine whether the Supreme Court intended secondary priority to attach if the laws of the creditor's State are silent on the question of escheat or if, as defendants allege, secondary priority attaches if the laws of the creditor's State actively exempt certain property from escheat.[9] Whether or not it is appropriate for the State where the debtor is incorporated to base estimates on property that was exempted by the creditor's State, plaintiff also alleges that estimates were based on cashed checks as well as property actually escheated to other States. (D.I. 1 at ¶ 77(c)-(g)) These latter examples, if true, are in tension with the Supreme Court's prohibition against double escheat as a violation of the Full Faith and Credit Clause. *Western Union*, 368 U.S. at 76. As pled,

---

[9] Although taken somewhat out of context, the court is inclined to agree with the sentiment expressed by the United States District Court for the District of New Jersey that "inherent in the State's sovereignty is its choice *not* to exercise custodial escheat over [the disputed property]." *American Express*, 755 F.Supp at 607.

24

the Full Faith and Credit Clause violation is inexorably intertwined with the alleged violation of the Commerce Clause. The court is unwilling to dispense with a potentially meritorious Commerce Clause claim at this stage of the litigation, as a more complete factual record would aid the court in making a determination. Accordingly the court denies defendants' motion to dismiss count V of the complaint alleging a violation of the Commerce Clause the Full Faith and Credit Clause. (D.I. 24)

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (D.I. 24) is granted in part and denied in part, and plaintiff's motion for summary judgment (D.I. 22) is denied. An appropriate order shall issue.